

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00497-CV

Satbir S. **CHHINA**, M.D. and Alejandro Gonzalez, Jr., FNP-C,
Appellants

v.

Luz Del Carmen **RODRIGUEZ** and Victor Velazquez, Individually and as Representatives of
the Estate of R.V., Deceased,
Appellees

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2017CVA002662D1
Honorable Jose A. Lopez, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed: December 27, 2018

AFFIRMED

In this accelerated appeal, Appellants Satbir S. Chhina, M.D. and Alejandro Gonzalez, Jr.,

FNP-C appeal from the trial court's order denying their motion to dismiss a health care liability

claim. We affirm the trial court's order.

## Background

On December 3, 2015, Appellees Luz Del Carmen Rodriguez and Victor Velazquez

(jointly, "the parents") took their five-month old son R.V. to Dr. Chhina's office for an

examination because R.V. had been suffering from a productive cough, chest congestion, and fever

for two days. Family Nurse Practitioner ("FNP") Gonzalez examined R.V. and diagnosed acute bronchiolitis and an upper respiratory infection. FNP Gonzalez's examination notes state: "[N]o specific treatment for RSV (Respiratory Syncytial Virus) or the other virus that cause bronchiolitis. Antibiotics are not helpful because they treat illnesses caused by bacteria, not viruses." FNP Gonzalez released R.V. with Tylenol and a nebulizer and instructed the parents to follow up with medical attention if R.V.'s symptoms worsened. Dr. Chhina electronically signed off on the examination notes later that day.

The parents administered respiratory treatments and oral medication that evening. By the next morning, however, R.V. was unresponsive and apneic. When the Laredo Emergency Medical Service arrived, R.V. was experiencing cardio-pulmonary arrest. R.V. died shortly after arriving at the hospital. An autopsy concluded R.V. died of sepsis due to a bacterial infection.

The parents brought a medical malpractice claim against Dr. Chhina and FNP Gonzalez and submitted the expert report of Armando Correa, M.D., a board certified pediatrician specializing in pediatric infectious diseases. Dr. Correa opined that Dr. Chhina and FNP Gonzalez breached the standard of care by diagnosing R.V.'s respiratory infection as viral, rather than bacterial, without performing an adequate examination and assessment. Dr. Correa further opined that R.V.'s death was a direct result of the substandard treatment he received from Dr. Chhina and FNP Gonzalez.

Dr. Chhina and FNP Gonzalez filed a motion to dismiss the parents' claim for failure to comply with the Texas Medical Liability Act requirements for an expert medical report. Specifically, Dr. Chhina and FNP Gonzalez argued Dr. Correa's report is conclusory and fails to adequately establish a causal link between the alleged misconduct and R.V.'s injuries and damages. After a hearing, the trial court denied the motion to dismiss. Dr. Chhina and FNP Gonzalez appeal.

**Discussion**

**A.      Standard of review**

We review a trial court's order denying a motion to dismiss based on the adequacy of an expert report for abuse of discretion. *Abshire v. Christus Health Se. Tex.*, No. 17-0386, 2018 WL 6005220, at *3 (Tex. Nov. 16, 2018) (per curiam). When analyzing the expert report for sufficiency under this standard, we consider only the information contained within the report's four corners. *Id.*

**B.      Expert report requirements**

The Texas Medical Liability Act requires a plaintiff to serve an expert report upon each defendant not later than 120 days after the defendant's answer is filed. *Id.* The purpose of this requirement is to "weed out frivolous malpractice claims in the early stages of litigation, not to dispose of potentially meritorious claims." *Id*. The trial court may dismiss a plaintiff's suit if her expert report is untimely or deficient. *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)).

An expert report is sufficient if it "provides a fair summary of the expert's opinions . . . regarding applicable standards of care, the manner in which the care rendered . . . failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). The report must "represent an objective good faith effort to comply" with these requirements. *Id.* § 74.351(*l*). A report represents a good faith effort if it "'(1) inform[s] the defendant of the specific conduct called into question and (2) provid[es] a basis for the trial court to conclude the claims have merit.'" *Abshire*, 2018 WL 6005220, at *3 (quoting *Baty v. Futrell*, 543 S.W.3d 689, 693–94 (Tex. 2018)). "A report 'need not marshal all the [plaintiff's] proof,' but 'a report that merely states the expert's conclusions about the standard of care, breach, and causation' is insufficient." *Id.* (quoting *Am. Transitional Care Ctrs. of Tex. v. Palacios*, 46 S.W.3d 873, 878–79 (Tex. 2001)).

An expert report must explain "how and why" the alleged negligence caused the plaintiff's injury. *Id.* at \*4 (citing *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010)). "A conclusory statement of causation is inadequate; instead, the expert must explain the basis of his statements and link conclusions to specific facts." *Id.*; *see also Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 461 (Tex. 2017) ("[W]ithout factual explanations, the reports are nothing more than the *ipse dixit* of the experts, which we have held are clearly insufficient."). "In satisfying this 'how and why' requirement, the expert need not prove the entire case or account for every known fact; the report is sufficient if it makes 'a good-faith effort to explain, factually, how proximate cause is going to be proven.'" *Abshire*, 2018 WL 6005220, at \*4 (quoting *Zamarripa*, 526 S.W.3d at 460).

## C.     Analysis

The supreme court recently addressed the sufficiency of an expert report's statement of causation in a case in which, as in this case, the plaintiff alleged the medical provider's failure to identify and treat her condition caused her to sustain an even more serious injury. In *Abshire v. Christus Health Southeast Texas*, the plaintiff's expert opined under the heading "Causal Relationships":

> The harm/injury that resulted from the substandard care provided by [Christus] was the exacerbation of an undiagnosed vertebral fracture that lead [sic] to a spinal cord injury resulting in paraplegia and bowel and bladder incontinence.
>
> Failure of the nursing staff to document a complete and accurate assessment resulted in a delay in proper medical care (ie. [sic] the ordering of imaging studies and protection of the spine.). . . . [H]ad the symptomology that Ms. Abshire was experiencing been appropriately linked to the [OI] diagnosis then she could have been admitted to the hospital on absolute bed rest, imaging studies such as a CT or MRI of her back ordered, then treatment started to preserved [sic] the integrity of the spine. . . .
> The hospital staff clearly ignored signs and symptoms of spinal injury and kept investigating the same areas over and over with no relief to the patient. . . . This failure on the part of the hospital staff allowed the spinal injury to progress to the point of paraplegia.

> Failure to consider the patient's prior relevant medical history was mostly [sic] likely a cause of the hospital staff's focus on the potential cardiac element of Ms. Abshire's pain. . . . Had they had a complete medical history they would have known to examine other areas and that this patient had a high probability of a compression fracture. The lack of proper documentation in the patient's medical record lead [sic] to a delay in treatment of Ms. Abshire's compression fracture which in medical probability lead [sic] to paralysis.

*Id*. The court concluded this explanation of causation "provides a straightforward link between the nurses' alleged breach of the standard of care and [the plaintiff's] spinal injury." *Id.* at *5. "That is, the report draws a line directly from the nurses' failure to properly document [the plaintiff's] OI and back pain, to a delay in diagnosis and proper treatment (imaging of her back and spinal fusion), to the ultimate injury (paraplegia)." *Id.*

Similarly, here, the parents allege Dr. Chhina's and FNP Gonzalez's failure to diagnose and treat R.V.'s bacterial respiratory infection caused his condition to worsen to cardio-pulmonary arrest and death. Like the expert opinion in *Abshire*, Dr. Correa's opinion on causation clearly links the alleged breach of the standard of care with R.V.'s injury:

> It is further my opinion based on reasonable medical probability that [R.V.'s] death on December 04, 2015, was a direct result of the substandard care and treatment by [Dr. Chhina and FNP Gonzalez]. If [R.V.'s] respiratory infection had been timely and properly diagnosed and treated by [Dr. Chhina and FNP Gonzalez] and more aggressively examined, assessed, and treated with hospitalization and inpatient care including chest x-rays, and additional laboratory testing to determine the source (viral and/or bacterial) of the respiratory infection and antibiotics, then [R.V.'s] death would have been prevented and he would be alive today.

> It is also my opinion that [Dr. Chhina and FNP Gonzalez] breached the standard of care and were negligent by failing to timely assess, diagnose, and treat the bacterial respiratory infection that [R.V.] was experiencing on December 03, 2015. It is further my opinion that this negligence and substandard care and treatment as outlined in this report was in reasonable medical probability a proximate cause of the bacterial infection worsening and progressing to the point that on the morning of December 04, 2015, [R.V.] experienced cardio-pulmonary arrest and subsequently died at the Laredo Medical Center Emergency Department (E/D).

Dr. Correa's report specifically states what treatment Dr. Chhina and FNP Gonzalez should have performed (hospitalization and inpatient care including chest x-rays and additional laboratory testing) and what injury R.V. sustained because they failed to do so (the bacterial infection worsening and progressing to the point that R.V. experienced cardio-pulmonary arrest and subsequently died). Therefore, Dr. Correa's report adequately links his conclusion with the underlying facts.

We express no opinion on the ultimate evidentiary value of Dr. Correa's opinions. At this stage, the parents are not required to "'present evidence in the report as if [they] were actually litigating the merits.'" *Id.* at \*6 (quoting *Palacios*, 46 S.W.3d at 879). We conclude Dr. Correa's report constitutes an objective, good faith effort to comply with the Texas Medical Liability Act's requirement to provide a fair summary of the expert's opinion regarding the causal relationship between Dr. Chhina's and FNP Gonzalez's alleged breach and R.V.'s injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(*l*), (r)(6).

### Conclusion

Because we conclude Dr. Correa's expert report complies with the Texas Medical Liability Act, we overrule Dr. Chhina's and FNP Gonzalez's sole issue on appeal and affirm the trial court's order denying the motion to dismiss.

Sandee Bryan Marion, Chief Justice